IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andre Boyer,                                    :
                    Appellant                   :
                                                :   No.  1773 C.D. 2017
          v.                                    :
                                                :   Submitted:  June 15, 2018
City of Philadelphia Board of                   :
License and Inspection Review                   :


***OPINION NOT REPORTED***

MEMORANDUM OPINION
PER CURIAM                                           FILED:  December 31, 2018


          Andre  Boyer  (Appellant)  appeals,  *pro se*,  from  the  September  7,  2017
order of the Court of Common Pleas of Philadelphia County (trial court) affirming the
decision of the City of Philadelphia, Board of License and Inspection Review (Board),
which upheld the revocation of his license to carry a firearm in accordance with section
6109 of the Pennsylvania Uniform Firearms Act of 1995 (Act), 18 Pa.C.S. §6109.[1]


                    **Facts and Procedural History**

          On  February  18,  2014,  Appellant  was  issued  a  valid  license  to  carry
firearms  by  the  Police  Commissioner  of  the  Philadelphia  Police  Department
(Department).   (Trial Ct. Op. at 1.)   By letter dated July 18, 2016, the Police
Commissioner  notified  Appellant  that  his  license  was  revoked  as  a  result  of  his

---

[1] Under the Act, an issuing authority, in this case the Police Commissioner of the Philadelphia
Police Department, may revoke an individual's license to carry a firearm if it becomes evident that a
permit has been issued to an individual "whose character and reputation is such that the individual
would be likely to act in a manner dangerous to public safety."  *See* 18 Pa.C.S. §6109(e)(1)(i), (i).

"conduct which occurred on 5/20/16, which may have resulted in [his] arrest." (Board's Finding of Fact (F.F.) No. 1.) No box was checked on the form as to the reason; however, the form stated "carrying a firearm in building (court house) [sic] that prohibits firearms by citizens." (Board's F.F. No. 2.) Appellant timely appealed the revocation to the Board, which held a hearing on December 20, 2016. (Trial Ct. Op. at 1-2; Board's F.F. Nos. 1-2, 5.)

At the hearing, John McGrody, Vice President of the Fraternal Order of Police (FOP) Lodge 5, testified on behalf of the Department that on May 20, 2016, he was "in courtroom 480 [in Philadelphia City Hall] on jury selection on a civil trial" on a case that had "nothing to do directly with [] Appellant." (Notes of Testimony (N.T.), 12/20/16, at 4-5.) Mr. McGrody testified that when he observed Appellant enter the courtroom and sit in an area close to potential jurors, he expressed concern about Appellant's presence in the courtroom to the FOP's lawyer, as well as to the presiding judge, stating, "[Appellant] was a former police officer and I didn't know what he had to do with the case and I just had a concern with the man being in the courtroom." *Id.* at 9. Mr. McGrody stated that the judge instructed him to summon the sheriff, which he and the court staff were about to do, when Deputy Sheriff Lee "just happened to get off the elevator and was in the hallway at the same time." *Id.* Mr. McGrody testified that Deputy Lee then made an announcement in the courtroom that only individuals that were parties to the case were permitted to be in the room, after which Appellant left the courtroom. *Id.* at 10; Board's F.F. Nos. 6-9.

Deputy Lee also testified at the hearing and stated that when he exited the elevator, he was "alerted by the court officer" that there was possibly "a person in the courthouse that [was] carrying a weapon." (N.T., 12/20/16, at 16.) He stated that when he asked the court officer what made her believe Appellant was carrying a weapon, she

2

responded that it was because Appellant was an "ex-Philadelphia Police Officer." *Id.* **Deputy Lee testified that when he approached Appellant and asked whether he had a gun on him, Appellant replied, "yes," and pulled out his Act 235 card.[2]** *Id.* at 17. **Deputy Lee stated that he then told Appellant that he "need[ed] to leave [City Hall], go over to the Criminal Justice Center [(CJC)] and lock it up," since "there [were] signs . . . telling you that you're not allowed to carry a weapon in the building."** *Id.* **Deputy Lee stated that he then "got on the elevator with [Appellant], went down to the bottom floor," and Appellant "walked out the door and [] went straight over to the CJC."** *Id.* at 18. Deputy Lee testified that Appellant was not arrested or detained and his weapon was not taken from him. On cross-examination, Deputy Lee acknowledged that he did not pat Appellant down and did not actually see the weapon but stated that, when Appellant stated he had a gun and indicated its location on his person, Deputy Lee did see a bulge. *Id.* at 21, 30; Board's F.F. Nos. 10-13.

With regard to the signs, Deputy Lee testified that signs are posted at every entrance to City Hall which "strictly prohibi[t] bringing in any firearms or other dangerous weapons into [the] building." (N.T., 12/20/16, at 19.) Deputy Lee also stated the signs warn that "[t]hose possessing a valid license to carry firearms issued under Pennsylvania Statute 1[8] Pa. C.S. [§]6109 are not exempt from this prohibition

---

[2] Act 235 refers to the Lethal Weapons Training Act, Act of October 10, 1974, P.L. 705, *as amended*, 22 P.S. §§41-50.1. Act 235 was enacted to provide for the "education, training and certification of such privately employed agents who, as an incidence to their employment, carry lethal weapons." 22 P.S. §42(b). Section 2(a) of Act 235 lists five occupations for which firearm training is required: private detectives, investigators, watchmen, security guards, and patrolmen. 22 P.S. §42(a). Upon completion of Act 235 training, one receives an Act 235 card. 22 P.S. §47. "Privately employed agents must possess a valid certificate whenever on duty or going to and from duty and carrying a lethal weapon." Section 8(a) of the Act, 22 P.S. §48(a).

and must check all firearms or other weapons in the Criminal Justice Center." *Id.* at 20.

Appellant testified at the hearing and stated, "I was not carrying a weapon and I can prove that"; however, Appellant did admit that he was wearing a holster. (N.T., 12/20/16, at 21-22.) When Appellant was asked why a CJC weapons check logbook documented him locking up an item at the CJC at 11:41 a.m. and retrieving it at 11:30 p.m., Appellant testified, "I did put handcuffs in—that's what I put inside [the lock box], handcuffs." *Id.* at 26. When asked why he felt the need to lock up his handcuffs, Appellant testified that it was "because you can't go inside the State building with handcuffs on." *Id.* at 39; Board's F.F. Nos. 14-15[3].

Appellant made several arguments on his own behalf, including that the revocation was done in response to a letter written by a member of the FOP in retaliation against Appellant for his Facebook blog called "Corruption in Philly Serpico News right in your face," where he writes about "corruption within the Philadelphia Police Department." (Appellant's Br. at 9; N.T., 12/20/16, at 33.) Appellant also argued that he was "racially profiled" as "a black man in the courthouse known to carry a gun," (N.T., 12/20/16, at 33); that as a 17½-year veteran of the Philadelphia Police Department, he was aware he could not bring a firearm into a courthouse and never violated that protocol; and that if Deputy Lee did receive word Appellant was carrying a firearm, he had a "sworn duty to lock that person up right then and there," *id.* at 31. During his closing argument, Appellant requested a continuance so that he could produce the testimony of two law enforcement officers who patted him down after he left the courthouse and could testify that Appellant was not carrying a firearm, as well

---

[3] Appellant stated he left his gun, but not his holster or handcuffs, in his car in a locked box because "afterwards I was going to the range with a fellow friend." (N.T., 12/20/16, at 27.)

4

as the security camera footage of that encounter. The Department objected to the request for a continuance and the Board denied Appellant's request.

At the conclusion of a hearing held on December 20, 2016, the Board voted to affirm the revocation, stating that "Appellant's conduct as established by the credible evidence of record was sufficient to support revocation of his license to carry a firearm." (Board's Conclusion of Law 3.) In so finding, the Board stated that it found the testimony of Mr. McGrody and Deputy Lee credible and the testimony of Appellant, insofar as it was inconsistent with that of Mr. McGrody and Deputy Lee, not credible. (Board's F.F. No. 17.)

Appellant filed an appeal with the trial court. Thereafter, the trial court accepted briefs and scheduled a hearing during which it heard argument from the parties. By order dated September 7, 2017, the trial court affirmed the decision of the Board, holding that its findings of fact were supported by its citations to the hearing transcript and accordingly supported by substantial evidence. Appellant filed a notice of appeal. Without directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), the trial court issued an opinion on November 6, 2017, in support of its order.

## Discussion

On appeal to this Court,[4] Appellant argues that the Board erred in (1) denying Appellant reinstatement of his license where there was "no factual evidence,"

---

[4] In an appeal from a court of common pleas' review of an adjudication by the Board, where the court of common pleas takes no new evidence, this Court must affirm the Board's decision unless the decision violated the appellant's constitutional rights, the decision was not in accordance with law, the proceedings before the Board violated the practices and procedures of local agencies, or any necessary findings of fact made by the Board were not supported by substantial evidence. *See* 2 Pa.C.S. §754(b); *Mulberry Market, Inc. v. City of Philadelphia, Board of License and Inspection Review*, 735 A.2d 761 (Pa. Cmwlth. 1999).

where no witness could testify that Appellant had a weapon or committed a crime, and where Appellant was not arrested; (2) failing to comply with a previous "mandated court settlement"; (3) affirming the Board's findings of fact and conclusions of law where they were "supported only by hearsay circumstantial evidence with no actual evidence a crime had been committed by Appellant"; and (4) upholding the Board's order denying Appellant's request to postpone the December 20, 2016 hearing in order for Appellant to "produce witness [sic] and subpoena courthouse CCTV Surveillance tapes as evidence." (Appellant's Br. at 6.)

The Department contends that the Board's decision was based upon substantial evidence that Appellant knowingly and illegally brought a gun into a courthouse. The Department initially observes that the Board heard testimony "that there were signs posted at every entrance to City Hall informing visitors that under state law, it is strictly prohibited to bring a firearm into the building." (Department's Br. at 7.) The Department also notes Appellant's testimony that he left his gun, but not his handcuffs or holster, in his car and Appellant's testimony that the reason he checked his handcuffs was because he believed they were not allowed inside a state building, which is where he testified he went after leaving City Hall.

The Department asserts that, by failing to adequately brief and/or preserve them, Appellant waived his remaining arguments with regard to his "last-minute" request for a continuance, violation of his Second Amendment rights, the failure to comply with a settlement in another case, and the identity of the signor of the initial license revocation letter.[5] (Department's Br. at 2.) Further, the Department states that, even if these arguments were not waived, they should be rejected on their merits.

---

[5] Although Appellant did not list this as one of his four identified issues briefed on appeal, Appellant does state, "Police Commissioner Richard Ross did not make the decision to revoke

6

We begin by analyzing whether there was substantial evidence supporting the Board's decision to revoke Appellant's license. In his first and third arguments, Appellant contends that the Board erred in upholding the revocation since there was no "direct factual evidence" supporting the revocation and he was not convicted of a crime, which he contends is "needed by law" to revoke a license to carry. (Appellant's Br. at 10.) Appellant relies upon the fact that no witness testified to actually seeing a gun on Appellant and asserts that Deputy Sheriff Lee's behavior when encountering Appellant, specifically by not drawing his own firearm or arresting Appellant, casts doubt on Deputy Lee's testimony that he saw a bulge where he believed Appellant was carrying the gun.

Section 6109(d), (e)(1)(i) of the Act governs licenses to carry a firearm concealed on one's person:

> **(d) Sheriff to conduct investigation.--**The sheriff to whom the application is made shall:
>
> . . .
>
> (3) investigate whether the applicant's character and reputation are such that *the applicant will not be likely to act in a manner dangerous to public safety*;
>
> . . .
>
> **(e) Issuance of license.--**
> (1) A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle and shall be issued if, after an investigation not to exceed 45 days, it appears that the applicant is an individual concerning whom no good cause exists to deny the license. A license shall not be issued to any of the following:
>
> (i) *An individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety*.

Appellant's License to carry as it was Not his signature who revoked Appellant's License to carry." (Appellant's Br. at 12.)

7

18 Pa. C.S. §6109(d), (e)(1)(i) (emphasis added).

> This Court has held that the legislature intended Section 6109 of the Uniform Firearms Act to confer discretion on sheriffs and/or police commissioners, depending upon the jurisdiction in question, empowering them to exercise judgment in applying the act's standards to determine if applicants should be licensed. That principle also applies to the revocation of a license.

*Morley v. City of Philadelphia Licenses & Inspections Unit*, 844 A.2d 637, 640-41 (Pa. Cmwlth. 2004) (internal citations omitted). An abuse of that discretion occurs only when there is evidence of bad faith, capricious action, or abuse of power. *Keith v. Department of Public Welfare*, 551 A.2d 333, 336 (Pa. Cmwlth. 1988).

Here, the Board heard testimony from Appellant, Mr. McGrody, and Deputy Lee, and found the latter two credible. **The Board accepted the testimony of Deputy Lee that Appellant possessed a concealed firearm in a courthouse, acknowledged it and produced his Act 235 card when confronted, and immediately heeded the officer's advice to put it in a lockbox across the street in the CJC. Based upon that evidence, the Board, and subsequently the trial court, concluded that there was good cause to revoke Appellant's license and that the Department acted properly in doing so.**

The Board specifically concluded, "Appellant's conduct as established by credible evidence of record was sufficient to support revocation of his license to carry a firearm," and stated, "Based upon the credible evidence of record, the Board concludes that there was good cause to revoke Appellant's firearms license and that the [Department] acted properly in doing so." (Board's Conclusions of Law 3-4.) Appellant's choice to bring a concealed firearm into a courtroom, despite passing signs with strict warnings against doing so, supports the Board's determination that

8

Appellant's behavior demonstrated that he lacks the requisite character and reputation entitling him to a license to carry a firearm, particularly where **Appellant, as a 17½-year veteran of the Philadelphia Police Department, acknowledged his awareness that doing so was illegal**. *See* N.T., 12/20/16, at 40, 41.

Although Appellant complains that the Department only presented hearsay evidence, Appellant cites no authority supporting his assertion that "direct evidence" that he "possessed a gun or committed a crime [] is needed by law" to substantiate the revocation of a license to carry. (Appellant's Br. at 10.) "As a general matter, a party bringing a civil action must prove, by direct or circumstantial evidence, facts by which the trier of fact can reasonably draw the inference urged by the plaintiff." *Fitzpatrick v. Natter*, 961 A.2d 1229, 1241 (Pa. 2008) (internal citations and quotation marks omitted). There is "a limit to the inferences that the jury may reasonably draw from [] circumstantial evidence," in that, when "[v]iewed as a whole, the evidentiary threads must be sufficient to lift [the] contention out of the realm of speculation." *Id.* However, "[w]hen properly prove[n], circumstantial evidence is entitled to as much weight as direct evidence." *Monaci v. State Horse Racing Commission*, 717 A.2d 612, 618 (Pa. Cmwlth. 1998).

Moreover, while findings cannot be based entirely on hearsay, nothing in the Act expressly forbids a Police Commissioner from considering hearsay evidence in making the decision to revoke a license, as the issuing authority is not bound by the technical rules of evidence under section 554 of Local Agency Law, 2 Pa.C.S. §554. *See Goodman v. Commonwealth*, 511 A.2d 274, 277 (Pa. Cmwlth. 1986) ("While . . . local agencies are not bound by technical rules of evidence, findings based solely on hearsay cannot stand.").

Additionally, Appellant argues that the Police Commissioner erred in revoking his license where he did "not commi[t] a crime nor was he convicted of a crime or arrested." (Appellant's Br. at 12.) The Act, however, does not require that a licensee be charged or convicted as a result of the behavior that the Police Commissioner, in his discretion, determines demonstrated a propensity to act in a manner dangerous to public safety. Moreover, Appellant ignores that this Court has previously upheld revocations where the licensee's conduct did not lead to a criminal charge or conviction and where the revoking authority relied on hearsay and circumstantial evidence.[6]

Here, Appellant was not charged for the conduct that led to his revocation, nor was he, like the appellant in *Morley*, convicted of a crime. Nonetheless, the Police Commissioner determined that Appellant's conduct, as related by Mr. McGrody and Deputy Lee, demonstrated that he was likely to act in a manner that presented a danger to public safety. The Board, reviewing all the evidence—including Appellant's admission he showed Deputy Lee his Act 235 card when questioned about whether he had a firearm and the fact that the CJC weapons check logbook documented Appellant locking up, and subsequently retrieving, an item after the encounter with Deputy Lee—and finding Mr. McGrody and Deputy Lee credible, agreed that there was good cause for the revocation. Accepting those credibility determinations, we find

---

[6] In *Morley*, the appellant, John Morley, was involved in an altercation in a bar where he brandished his firearm. 844 A.2d at 638, 641. A warrant was issued for Morley's arrest on the same day that the Department issued a letter notifying him that his license had been revoked. *Id.* Although the criminal charges were later dismissed when witnesses repeatedly failed to appear to testify, the Board upheld the license revocation, stating "the Commissioner had good cause to revoke [Morley's] license to carry a firearm." *Id.* at 638. The trial court affirmed and, upon review, this Court agreed that the facts of the case supported the Board's determination that Morley lacked the requisite character and reputation entitling him to a license to carry a firearm. *Id.* at 641.

that the Board did not err or abuse its discretion in upholding the Police Commissioner's decision to revoke Appellant's license. With regard to Appellant's hearsay argument, we observe that Mr. McGrody did not testify regarding any out-of-court statements offered to prove the truth of the matter asserted.[7] Similarly, Deputy Lee's testimony regarding Appellant's affirmative response when asked whether he had a weapon is a clear admission by a party opponent and thus is not hearsay. *See* Pennsylvania Rule of Evidence 803(25)(A) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: The statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity.").

With regard to Appellant's argument that Deputy Lee did not act in a manner that police officers should when encountering a person alleged to be carrying a concealed weapon, Appellant is simply expressing disagreement with the credibility determination and evidentiary weight the Board assigned to Deputy Lee's testimony. Such a determination is solely within the province of the factfinder and will not be reversed on appeal absent an abuse of discretion, which is not evident here. *See*

---

[7] To the extent that Mr. McGrody testified about his conversation with the FOP attorney and the judge, it is clear that it was offered to explain how Deputy Lee came to encounter Appellant and why Deputy Lee and Appellant acted the way they did at the time of the incident. *See Commonwealth v. Cruz*, 414 A.2d 1032, 1035 (Pa. 1980) ("It is well-established that an out-of-court statement offered to explain a course of conduct is not hearsay."). The same applies to Mr. McGrody's testimony regarding Deputy Lee's announcement that only individuals that were parties to the case were permitted to be in the courtroom. Finally, Deputy Lee's testimony about his conversation with the court clerk wherein she expressed her concern about Appellant carrying a weapon related to the Deputy's state of mind when he encountered Appellant and does not constitute hearsay "because it [was] not offered for the truth of its content, but to show that this is what the witness understood, what was in his mind when he acted as he did. He, being the witness, can be cross-examined at length to test the credibility of whether this was his state of mind." *Eagle v. Unemployment Compensation Board of Review*, 659 A.2d 60, 62 (Pa. Cmwlth. 1995).

11

*Mulberry Market, Inc.*, 735 A.2d at 767 ("It is solely for the factfinder to assess credibility and to resolve conflicts in the evidence.").

We next address Appellant's argument regarding the denial of his request for a continuance. Upon review of the hearing transcript, it appears Appellant first sought a continuance during closing arguments in order to present testimony from "two sheriffs and two security guards[8] and possibly the State camera that can prove they did pull their guns out and search me 'cause they saw the holster." (N.T., 12/20/16, at 35.) In his brief to the trial court, Appellant again made a reference to the denial, stating the Board "violated Appellant['s] civil rights [t]o a fair and unbiased hearing by DENIEING [sic] request to postpone hearing in order for Appellant to subpoena witnesses and other evidence crucial to his case without just cause." (O.R. Item No. 11.) Finally, in his brief to this Court, Appellant asserts that "his due process [sic] was Violated when the [B]oard denied Appellant a continuance in order to produce witnesses, Documents and evidence of retaliation by one of the witnesses." (Appellant's Br. at 12.) Citing *United States v. Miller*, 307 U.S. 174 (1939), Appellant argues that the denial of the continuance "is a direct violation under color of Law." *Id. Miller*, however, supports no such contention, nor does it even contain any reference to a request for a continuance. *See District of Columbia v. Heller*, 554 U.S. 570, 623 (2008) ("*Miller* stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons.").

"It is well settled that the grant or refusal of a continuance rests in the discretion of the court or administrative agency to which the application is made, and

---

[8] Throughout the transcript, Appellant also refers to "two U.S. Marshals" or "two federal marshals" and "four state security guards," who stopped and patted him down after he had left the courthouse and who could purportedly testify that Appellant "never had a gun on him." (N.T., 12/20/16, at 22, 26.)

its exercise of this discretion will not be reviewed except in clear cases of abuse." *Blackledge v. Pennsylvania State Police*, 435 A.2d 309, 311 (Pa. Cmwlth. 1981). Here, we are satisfied that the Board did not abuse its discretion in denying the request for a continuance where Appellant made the request for the first time during closing arguments and at no point to date has expressed why he was unable to prepare his case in time for the hearing. Furthermore, it is not clear how this evidence would have been relevant to Appellant's case, since, at best, it could only show that Appellant was not carrying a firearm at some point after the relevant time period, *i.e.*, after he left the courtroom.

We turn now to consideration of whether Appellant has waived his remaining arguments. Section 753(a) of the Local Agency Law provides that "if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown." 2 Pa.C.S. §753(a). [9]

---

[9] Throughout his brief, Appellant makes references to the violation of his Second Amendment and/or civil rights. For example, Appellant states, "[T]he Common Pleas erred by upholding the Boards [sic] decision to revoke Appellant's License to carry a firearm and violated his constitutional second amendment right," before segueing into his repeated pronouncement that he was not arrested or convicted of a crime. (Appellant's Br. at 12.) However, we note that insufficiently developed arguments may be deemed waived by the Court. *See* Pa.R.A.P. 2101 ("[I]f the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); Pa.R.A.P. 2119 ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, *followed by such discussion and citation of authorities as are deemed pertinent*." (emphasis added)). Here, Appellant's sporadic references to the violation of his constitutional rights are not sufficient to develop his argument and, thus, this argument is waived. *See Commonwealth v. Lawrence*, 99 A.3d 116, 122 (Pa. Super. 2014) (noting that "issues regarding the constitutionality of a statute can be waived." (internal quotation marks and brackets omitted)); *Lehman v. Pennsylvania State Police*, 839 A.2d 265 (Pa. 2003) (holding that as-

13

Initially, we observe that because Appellant did not raise the issue of the identity of the signer of the revocation letter at any time prior to his brief to this Court, the issue is indeed waived. *See* 2 Pa.C.S. §753(a); Pa.R.A.P. 302(a), 1551(a); *Lehman*, 839 A.2d at 275-76. Furthermore, even if not waived, Appellant has foreclosed this Court's review by his failure to develop the argument.[10] *Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008) ("[T]his Court has held, [w]hen issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof. Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." (internal citations and quotation marks omitted)).

Appellant has likewise waived his argument as to the Board's purported failure to abide by a settlement agreement adopted by court order in *Doe v. City of Philadelphia* (C.C.P. Phila., No. 121203785, filed June 24, 2014),[11] since a thorough

---

applied constitutional challenges must be raised before the fact-finder in an appeal from the denial of an application to purchase a firearm or else are waived).

[10] The revocation letter in the certified record contains a handwritten note, which crosses out the original date of 7/11/2016, and adds "corrected letter on 7/18/2016." (Original Record (O.R.) at Item No. 10.) The extent of Appellant's argument on the matter is contained in his brief where he references that the original revocation letter was signed by Police Commissioner Charles Ramsey "who was no longer acting Police Commissioner which violated his right," (Appellant's Br. at 11), and later states, "Appellant asserts Police Commissioner Richard Ross did not make the decision to revoke Appellant's License to carry as it was Not his signature [that] revoked the Appellant's License to carry." *Id.* at 12.

[11] As we noted in *Doe v. City of Philadelphia* (Pa. Cmwlth., No. 990 C.D. 2017, filed April 4, 2018):

> On December 31, 2012, [John Doe], on behalf of himself and other similarly situated individuals, commenced a class action against the City of Philadelphia (City), Mayor Michael A. Nutter, the Philadelphia Police Department (PPD), the Gun Permit Unit of the PPD (Gun Permit

review of the record reveals that Appellant raised this argument for the first time during argument before the trial court. *See* 2 Pa.C.S. §753(a); Pa.R.A.P. 302(a), 1551(a); *Lehman*, 839 A.2d at 275-76. Further, even if not waived, we note that while Appellant asserts that this court-adopted settlement forbids confiscation of a person's license to carry unless there is probable cause that the license is evidence of a crime, Appellant does not explain why this settlement pertains to this matter or why it is appropriate for Appellant to attempt to enforce it here. Moreover, as the Department notes, it is clear that the portion of the settlement that Appellant references[12] pertains only to situations

> Unit), the Philadelphia License and Inspection Board of Review (L & I Board), and the Philadelphia Office of Innovation and Technology (collectively, Appellees), setting forth causes of action for violations of Section 6111 of the Pennsylvania Uniform Firearms Act of 1995 (Act)[] and breach of confidentiality/invasion of privacy. [Doe] alleged that Appellees violated Section 6111 of the Act by improperly disclosing confidential information regarding Philadelphia residents who appealed the denial or revocation of their Pennsylvania licenses to carry firearms (LTCF) to the L & I Board. [Doe] sought injunctive relief to enjoin Appellees from further disclosing such confidential information, as well as statutory and other damages, attorneys' fees, and costs. Sometime thereafter, the parties entered into the Settlement Agreement.

*Id.*, slip op. at 1 (footnote omitted).

[12] Paragraph 17 of subsection A, under section III of the agreement, entitled "Settlement Terms" states,

> The City shall not confiscate any LTCF unless there is probable cause to believe that the LTCF is evidence of a crime. In the event an LTCF is confiscated, the City shall immediately provide a completed property receipt to the LTCF holder as required by Philadelphia Police Department Directive 91, which property receipt shall set forth the LTCF number, the date, time and location of the confiscation, the reason for confiscation, and the confiscating officer's name and badge number.

15

where police physically seize a license because the document itself is evidence of a crime and is not applicable to administrative revocations by letter. If it were otherwise, the settlement would have the effect of nullifying section 6109 entirely since the Police Commissioner would be unable to revoke a license for any of the reasons listed in section 6109, including for individuals who are "not of sound mind or who . . . have been committed to a mental institution," unless the licensee's actual physical license was also evidence of a crime. 18 Pa.C.S. §6109(e)(v).

        Accordingly, we affirm.

-----

Although this settlement agreement and the subsequent order adopting it were sealed by court order, as the City notes in its brief, the agreement was published online and is available at the following website: https://princelaw.files.wordpress.com/2014/07/filed-settlement-agreement.pdf

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Andre Boyer,                                :
                Appellant        :
                             :    No.  1773 C.D. 2017
           v.                               :
                             :
City of Philadelphia Board of    :
License and Inspection Review    :

**_PER CURIAM_**

**_ORDER_**

AND NOW, this 31st day of December, 2018, the September 7, 2017 order of the Court of Common Pleas of Philadelphia County is hereby affirmed.